**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EVA J. SHULTZ,

                Plaintiff,

        v.

NANCY A. BERRYHILL, Acting
Commissioner of Social
Security,[1]

             Defendant.

) Case No. EDCV 16-2565-JPR
)
)
) **MEMORANDUM DECISION AND ORDER**
) **AFFIRMING COMMISSIONER**
)
)
)
)
)
)
)

## I.    PROCEEDINGS

    Plaintiff seeks review of the Commissioner's final decision denying her applications for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed September 18, 2017, which the Court has taken under submission without oral argument. For the reasons stated below,

---

    [1] Nancy A. Berryhill is substituted in as the correct Defendant. <u>See</u> Fed. R. Civ. P. 25(d).

1

1  the Commissioner's decision is affirmed.

2  **II.  BACKGROUND**

3      Plaintiff was born in 1953.  (Administrative Record ("AR")

4  89, 121, 131.)  She completed college (AR 291) and worked as a

5  substitute teacher (AR 90-91, 282, 291).

6      On May 29, 2012, Plaintiff applied for DIB and SSI, alleging

7  that she had been unable to work since April 28, 2012, because of

8  scoliosis, cellulitis, asthma, rosea, allergies, hernia, spine

9  injury, lower-back pain, arthritis, bad knees, damage to her

10 esophagus and stomach "due to medication," and Crohn's disease.[2]

11 (AR 121, 131, 256-64.)  After her applications were denied

12 initially and on reconsideration (see AR 168-69, 173-81, 185-89),

13 she requested a hearing before an Administrative Law Judge (AR

14 191).  A hearing was held on August 11, 2014, at which Plaintiff,

15 who was represented by counsel, testified.  (See AR 83-100.)  The

16 hearing stopped early (see AR 99-100), and the ALJ sent follow-up

17 interrogatories to a vocational and a medical expert (AR 330-43,

18 673-94).  They responded on October 14, 2014,[3] and August 23,

19

20      [2] Plaintiff previously applied for DIB on October 20, 2009.
   (See AR 34, 104.)  The application was denied, and the decision
21 was affirmed by an ALJ on February 15, 2011.  (See AR 34, 104-
   14.)  The denial was affirmed by the district court on December
22 19, 2013.  (AR 170-72); Schultz v. Colvin, No. EDCV 12-0989-JPR,
   2013 WL 6732879 (C.D. Cal. Dec. 19, 2013).  The ALJ here found
23 that Plaintiff had demonstrated changed circumstances since that
   final decision, however (AR 34-35), and thus the Chavez
24 presumption does not apply.  See Lester v. Chater, 81 F.3d 821,
   827-28 (9th Cir. 1995) (as amended Apr. 9, 1996) (citing Chavez
25 v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988)).  Defendant does not
   contend otherwise.
26

27      [3] The vocational expert also submitted an almost identical
   second response on October 27, 2014, which differed in that it
28 suggested light occupations rather than the sedentary occupations
   suggested in the first.  (AR 340-43.)

2014, respectively.  (AR 336-39, 686-94.)  Plaintiff objected to the vocational expert's opinion (AR 350) and requested a supplemental hearing to address the medical expert's opinion (AR 327-28), which the ALJ apparently declined to hold.[4]  In a written decision issued December 4, 2014, the ALJ found Plaintiff not disabled.  (AR 34-49.)  Plaintiff sought Appeals Council review (AR 30), which was denied on September 27, 2016 (AR 14-18).  This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715,

---

[4] Although Plaintiff raised the ALJ's failure to acknowledge her responses before the Appeals Council (AR 348-49), she has abandoned the issue here (see generally J. Stip.).

3

720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.  The Five-Step Evaluation Process

The ALJ follows a five-step evaluation process to assess whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied.  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to

determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[5] to perform her past work; if so, she is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. <u>Drouin</u>, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. <u>Id.</u> If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); <u>Drouin</u>, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

---

[5] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; <u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. <u>Laborin v. Berryhill</u>, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

B.  The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 28, 2012, the alleged onset date.  (AR 37.)  At step two, he concluded that Plaintiff had severe impairments of "obesity; borderline high blood pressure; osteoarthritis; and degenerative disc disease."  (AR 37-38.)  At step three, he determined that Plaintiff's impairments did not meet or equal a listing.  (AR 38.)  At step four, the ALJ found that Plaintiff had the RFC to "perform the full range of medium work."  (AR 38-42.)  Based on the vocational expert's opinion (see AR 330, 336-39), the ALJ concluded that Plaintiff could perform past relevant work as an "[e]lementary school teacher," DOT 092.227-010, 1991 WL 646895.  (AR 42-43.)  At step five, he alternatively determined that she could perform other jobs that existed in significant numbers in the national economy.  (Id.)  Indeed, given Plaintiff's RFC for a full range of medium work, the ALJ noted, the Grids dictated a finding of "not disabled."  (AR 43.)  Accordingly, he found Plaintiff not disabled.  (AR 43-44.)

**V.  DISCUSSION**

Plaintiff argues that the ALJ improperly rejected the opinion of cardiologist Harvey Alpern, a consulting medical expert.  (J. Stip. at 4-9, 12.)  As discussed below, the ALJ properly evaluated the medical-opinion evidence.  Accordingly, remand is not warranted.

A.  Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those

who examined but did not treat the plaintiff, and those who did

neither. <u>Lester</u>, 81 F.3d at 830. A treating physician's opinion

is generally entitled to more weight than an examining

physician's, and an examining physician's opinion is generally

entitled to more weight than a nonexamining physician's. <u>Id.</u>;

<u>see</u> §§ 404.1527, 416.927.[6] But "the findings of a nontreating,

nonexamining physician can amount to substantial evidence, so

long as other evidence in the record supports those findings."

<u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam)

(as amended).

The ALJ may disregard a physician's opinion regardless of

whether it is contradicted. <u>Magallanes v. Bowen</u>, 881 F.2d 747,

751 (9th Cir. 1989); <u>see</u> <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>,

533 F.3d 1155, 1164 (9th Cir. 2008). When a physician's opinion

is not contradicted by other medical-opinion evidence, however,

it may be rejected only for "clear and convincing" reasons.

<u>Magallanes</u>, 881 F.2d at 751; <u>Carmickle</u>, 533 F.3d at 1164 (citing

<u>Lester</u>, 81 F.3d at 830-31). When it is contradicted, the ALJ

_____

[6] Social Security regulations regarding the evaluation of
opinion evidence were amended effective March 27, 2017. When, as
here, the ALJ's decision is the final decision of the
Commissioner, the reviewing court generally applies the law in
effect at the time of the ALJ's decision. <u>See</u> <u>Lowry v. Astrue</u>,
474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of
regulation in effect at time of ALJ's decision despite subsequent
amendment); <u>Garrett ex rel. Moore v. Barnhart</u>, 366 F.3d 643, 647
(8th Cir. 2004) ("We apply the rules that were in effect at the
time the Commissioner's decision became final."); <u>Spencer v.
Colvin</u>, No. 3:15-CV-05925-DWC, 2016 WL 7046848, at *9 n.4 (W.D.
Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any
express authorization from Congress allowing the Commissioner to
engage in retroactive rulemaking"). Accordingly, citations to 20
C.F.R. §§ 404.1527 and 416.927 are to the versions in effect from
August 24, 2012, to March 26, 2017.

must provide only "specific and legitimate reasons" for discounting it.  Carmickle, 533 F.3d at 1164 (citing Lester, 81 F.3d at 830-31).  The weight given a treating or examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things.  §§ 404.1527(c)(3)-(6); 416.927(c)(3)-(6).  Those factors also determine the weight afforded the opinions of nonexamining physicians.  §§ 404.1527(e); 416.927(e).  The ALJ considers findings by state-agency medical consultants and experts as opinion evidence.  Id.

Furthermore, "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  An ALJ need not recite "magic words" to reject a physician's opinion or a portion of it; the court may draw "specific and legitimate inferences" from the ALJ's opinion.  Magallanes, 881 F.2d at 755.  The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

B.    Relevant Background

1.    *Dr. Alpern*

On August 23, 2014, medical expert Dr. Alpern filled out a medical-source statement regarding Plaintiff's ability to do physical work-related activities.  (AR 686-94.)  He opined that

Plaintiff could "[f]requently" lift and carry "[u]p to 10 lbs" and "[o]ccasionally" lift and carry "11 to 20 lbs." (AR 686.) She could sit, stand, and walk for "2" hours "[a]t [o]ne [t]ime" without interruption; sit for "6" hours "[t]otal in an 8 hour work day"; and stand and walk for "2" hours "[t]otal in an 8 hour work day." (AR 687.) She did not "require the use of a cane to ambulate" (id.) and could "[f]requently" operate foot controls with both of her feet (AR 688). She could "[f]requently" use both hands for reaching, handling, fingering, feeling, pushing, and pulling. (Id.) Dr. Alpern stated that Plaintiff could "[o]ccasionally" climb stairs, ramps, ladders, or scaffolds; balance; stoop; kneel; crouch; or crawl. (AR 689.) None of her impairments affected her hearing or vision (id.), but she could only "[o]ccasionally" "tolerate exposure to" unprotected heights, moving mechanical parts, or dust, odors, fumes, or pulmonary irritants (AR 690).

Dr. Alpern also opined that Plaintiff could do all of the following: "perform activities like shopping"; "travel without a companion for assistance"; "ambulate without a wheelchair, walker or 2 canes or 2 crutches"; "walk a block at a reasonable pace on rough or uneven surfaces"; "use standard public transportation"; "climb a few steps at a reasonable pace with the use of a single hand rail"; "prepare a simple meal [and] feed . . . herself"; "care for [her] personal hygiene"; and "sort, handle, or use paper/files." (AR 691.) He diagnosed her with obesity, degenerative joint and disc disease,[7] asthma, and high blood

---

[7] He noted, however, that there was "no radiological support" for either. (AR 692.)

pressure.  (AR 692.)

The form Dr. Alpern filled out asked in eight different places what "particular medical or clinical findings" supported the assessment or limitations and how; Dr. Alpern left each such question blank.  (AR 686-91.)  He also left blank a question asking whether "any other work-related activities . . . are affected by any impairments."  (AR 691.)

    2.  *State-agency physicians*

In August 2012, state-agency medical consultant Dr. H. Han reviewed Plaintiff's medical records.  (AR 121-40.)  He found Plaintiff's only severe impairment to be discogenic and degenerative back disorder.  (AR 126, 136.)  He opined that she had the following exertional limitations: she could "lift and/or carry" 50 pounds "occasionally" and 25 pounds "frequently"; "[s]tand and/or walk" for "[a]bout 6 hours in an 8-hour workday"; sit for "[a]bout 6 hours in an 8-hour workday"; and "[p]ush and/or pull" an "[u]nlimited" amount aside from her lifting and carrying restrictions.  (AR 127, 137.)  He also found that she had the RFC to perform her past relevant work as a substitute teacher as "[a]ctually [p]erformed."  (AR 128-29, 138-39.)

In April 2013, state-agency medical consultant Dr. N. Tsoulos reviewed Plaintiff's medical records.  (AR 144-67.)  He found that Plaintiff had the following severe impairments: spine disorders, asthma, inflammatory arthritis, diseases of the esophagus, and inflammatory bowel disease.  (AR 151, 163.)  He further found the same exertional limitations and capacity to perform her past relevant work as Dr. Han.  (AR 152-54, 164-66.) His review showed that "the objective findings [did] not fully

support [Plaintiff's] alleged degree of functional impairment."
(AR 150, 162.)

       3. *Medical records*

Plaintiff's medical records consist largely of appointments with family physician Gita Tavassoli from 2011 through 2014.[8] The earliest notes available date to March 2011, when Plaintiff reported experiencing left-knee pain and right-hand numbness.[9] (AR 392-93.) She was prescribed Gabapentin[10] for her numbness and Motrin for her pain. (Id.) In May 2011, Plaintiff complained of lower-back pain at a level of "4/10" and stated that she was "unable to sit or stand longer than one hour," but upon examination her back showed "[n]ormal [c]urvature" and "[f]ull [range of motion]." (AR 390.) A nerve conduction study performed in June 2011 concluded that "[n]erve conductions of both upper extremities [were] normal." (AR 382-83.) At follow-up appointments with Dr. Tavassoli in January and March 2012, Plaintiff reported "[no] pain" and "no new complaints." (AR 366-67.) In June 2012, Plaintiff described her pain as "0/10," and Dr. Tavassoli stated that her cellulitis was "resolved with keflex"[11] and assessed her with "chronic" diarrhea secondary to a

---

[8] The ALJ gave "little weight" to Dr. Tavassoli's opinions (AR 41), a finding Plaintiff has not challenged on appeal.

[9] The ALJ found Plaintiff "less than fully credible" (AR 39), which she has not challenged on appeal.

[10] Gabapentin is used to treat nerve pain. Gabapentin, Drugs.com, https://www.drugs.com/gabapentin.html (last updated Nov. 7, 2017).

[11] Keflex is an antibiotic used to treat skin infections, among other things. See Keflex, Drugs.com, https://www.drugs.com/keflex.html (last updated Apr. 18, 2017).

food allergy. (AR 355.) She was referred for a barium enema[12]
and prescribed Claritin, Nexium,[13] albuterol sulfate,[14] and
Flovent.[15] (AR 355, 357.)

In July 2012, bilateral radiographs of Plaintiff's ankles,
knees, and shoulders showed that although "[t]here [was]
narrowing" of the joints "consistent with osteoarthritis,"
"[t]here [was] no radiographic evidence of bony erosion." (AR
415-16, 422, 426-27.) Radiographs of her right and left hands
were "unremarkable," with "[n]o acute osseous abnormality." (AR
420-21.) She also had radiographs of her thoracic spine, which
showed "[m]ild dextroscoliosis" and "[m]ultilevel discogenic
disease with thoracic spondylosis" (AR 423); her cervical spine,
which showed "mild degenerative disc disease" (AR 428); and her
lumbrosacral spine, which showed "[m]ultilevel discogenic disease
and lumbar spondylosis" (AR 429). That same month, she underwent
a barium enema, which showed "scattered colonic diverticular,"

_____

[12] A barium enema is an x-ray of the large intestine. See
Barium Enema, WebMD, https://www.webmd.com/digestive-disorders/
barium-enema#1 (last visited Mar. 13, 2018).

[13] Nexium treats stomach and esophagus problems by
decreasing the amount of acid made by the stomach. See Nexium
Capsule, Delayed Release, WebMD, https://www.webmd.com/drugs/
2/drug-20536/nexium-oral/details (last visited Mar. 13, 2018).

[14] Albuterol treats wheezing and shortness of breath caused
by asthma. See Albuterol Sulfate, WebMD, https://www.webmd.com/
drugs/2/drug-4872-3008/albuterol-sulfate-inhalation/
albuterol-salbutamol-solution-inhalation/details (last visited
Mar. 13, 2018).

[15] Flovent controls and prevents symptoms caused by asthma
by reducing swelling of the airways in the lungs to make
breathing easier. See Flovent Aerosol, WebMD, https://
www.webmd.com/drugs/2/drug-13522/flovent-inhalation/details (last
visited Mar. 13, 2018).

"mild diminished caliber of the sigmoid color," and "mild irregularity and fold thickening of the inferior wall of the transverse colon." (AR 417.) In August 2012, Plaintiff complained of pain at "3/10," and Dr. Tavassoli referred her to a "GI clinic for [a] colonoscopy" and again assessed her with "chronic" diarrhea. (AR 475-76.) Her prescribed medications remained the same. (AR 476.) In October 2012, Plaintiff described her pain as "4/10." (AR 460-61.)

In February 2013, Plaintiff stated that her pain was at "0/10" (AR 443), but by March 2013, she complained of pain at "8/10"; Dr. Tavassoli assessed her barium enema as "[a]bnormal," with "loose stool and no constipation," and again referred her to "GI." (AR 430-31, 516.) In April 2013, Plaintiff complained of left-hip pain at "2/10," but Dr. Tavassoli observed both hips to have a "[f]ull range of motion" and "no joint deformity, heat, swelling, erythema or effusion." (AR 514.) In May 2013, Plaintiff was prescribed physical therapy for her left-shoulder pain. (AR 511.) In July 2013, a radiograph of Plaintiff's left shoulder showed "[n]o acute osseous abnormality" and "[n]o significant degenerative change." (AR 487-88, 661.) In August 2013, Plaintiff described her knee pain as "6/10." (AR 499-500.) She also showed signs of edema, which Dr. Tavassoli prescribed hydrochlorothiazide to treat.[16] (AR 500.) In September 2013, her right knee showed "no effusion" or "displaced fracture" and only a "minimal irregularity to the medial tibial spine." (AR

---

[16] Hydrochlorothiazide reduces extra fluid in the body. See Hydrochlorothiazide, WebMD, https://www.webmd.com/drugs/2/drug-5310/hydrochlorothiazide-oral/details (last visited Mar. 13, 2018).

487, 659.)  Dr. Tavassoli advised using an ice pack and getting rest.  (AR 497.)  In October 2013, Plaintiff described her hip and right-shoulder pain as "7/10."  (AR 490-91.)  Though Dr. Tavassoli noted that her "[r]ight shoulder [had] tenderness[ and] moderate pain [with] motion" and an x-ray of it showed "mild arthritis," Plaintiff "refuse[d] any intervention" aside from occupational therapy.  (AR 491.)  Dr. Tavassoli further recommended "[M]otrin as needed" for her hip pain.  (<u>Id.</u>)  Later that month, Plaintiff's hip joints "appear[ed] unremarkable" but also demonstrated "[i]liac wing enthesopathy."  (AR 486, 657-58.) In November 2013, Plaintiff described her pain as "9/10," and her left pelvis was "tender" on the lateral hip joint; Dr. Tavassoli referred her to physical therapy.  (AR 620.)  In December 2013, Dr. Tavassoli diagnosed Plaintiff with arthritis and advised her to use a "heating patch on [her] back" and to "cont[inue] [M]otrin as needed."  (AR 617.)

Plaintiff's remaining musculoskeletal physical exams in the record — from late 2013 to late 2014 — showed "[n]ormal range of motion, muscle strength, and stability in all extremities with no pain on inspection."  (<u>See</u> AR 529 (May 2014), 608 (Apr. 2014), 611 (Feb. 2014), 614 (Jan. 2014), 617 (Dec. 2013), 663 (May 2014), 699 (Sept. 2014), 707 (Aug. 2014).  <u>But see</u> AR 729 (Oct. 2014: "[l]umbar spine has tenderness").)  In February 2014, a radiograph of her right shoulder demonstrated "no acute fracture dislocation," "normal" soft tissues, and "[n]o acute abnormality."  (AR 660.)  In April 2014, Plaintiff complained of right-knee pain but "refuse[d] any steroid injection" as treatment.  (AR 608.)

1          C.   Analysis

2          The ALJ gave "little weight" to Dr. Alpern's opinion and

3    "some weight" to the opinions of Drs. Han and Tsoulos.  (AR 41-

4    42.)  None of the doctors had examined Plaintiff.  Plaintiff

5    argues that the ALJ improperly rejected Dr. Alpern's opinion.

6    (J. Stip. at 4-9.)  The ALJ discounted Dr. Alpern's opinion

7    because the functional limitations he assessed were "too limiting

8    based on the medical evidence of record"; Plaintiff "received

9    routine and conservative treatment"; and "Dr. Alpern did not have

10   the benefit of personally observing and examining [Plaintiff]."

11   (AR 41.)  Because Dr. Alpern's opinion was contradicted, the ALJ

12   was required to provide a "specific and legitimate" reason for

13   rejecting it.  See Carmickle, 533 F.3d at 1164.  He did so.

14              1.   *Medical evidence of record*

15        Plaintiff contends that the ALJ "improperly rejected Dr.

16   Alpern's assessment of the medical evidence" and "substitute[d]

17   his . . . own interpretation of the medical evidence for the

18   opinion of [Dr. Alpern]."  (J. Stip. at 5-6.)

19        Inconsistency with the objective medical evidence can be a

20   specific and legitimate reason for rejecting a medical-source

21   opinion.  See Kohansby v. Berryhill, 697 F. App'x 516, 517 (9th

22   Cir. 2017) (upholding inconsistency with medical-opinion evidence

23   as specific and legitimate reason for rejecting medical opinion

24   (citing Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.

25   2008))).  Further, the ALJ may discount a physician's opinion

26   when it is conclusory, brief, and unsupported by the objective

27   medical evidence.  Batson, 359 F.3d at 1195; Matney ex rel.

28   Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing

                                   15

Magallanes, 881 F.2d at 751). Dr. Alpern indicated that
Plaintiff could lift and carry 10 pounds frequently and 20 pounds
occasionally and could sit for six hours, stand for two hours,
and walk for two hours total in an eight-hour workday. (AR 686-
87.) He did not provide any explanation for those findings,
however, despite being specifically asked what "particular
medical or clinical findings" supported his assessment. (See
id.)

The ALJ noted that the "functional limitations . . . [were]
too limiting based on the medical evidence of record." (AR 41.)
He cited the lack of "diagnostic imaging . . . reveal[ing]
significant findings such as neuropathy or nerve root
impingement" (AR 41 (citing AR 382, 423, 428)) and Plaintiff's
"physical examinations show[ing] full range of motion of the
upper and lower extremities, normal muscle strength and normal
stability" (AR 40 (citing AR 482-83, 514, 529, 605, 608, 611,
614, 617, 640, 663, 699, 702, 707, 712, 718-19)). Indeed,
Plaintiff's diagnostic exams consistently demonstrated either
unremarkable or mild results. (See, e.g., AR 382-83 ("normal"
nerve conduction study), 415-16 (signs of osteoarthritis in
ankles, but "no radiographic evidence of bony erosion"), 417
(barium enema finding "mild irregularity"), 420-21
("unremarkable" results with "[n]o acute osseous abnormality" in
hands), 422 (signs of osteoarthritis in knees, but "no
radiographic evidence of bony erosion"), 423 ("[m]ild
dextroscoliosis" and "[m]ultilevel discogenic disease with
thoracic spondylosis" in thoracic spine), 426-27 (signs of
osteoarthritis in shoulders, but "no radiographic evidence of

16

bony erosion"), 428 ("mild degenerative disc disease" in cervical spine), 486 ("hip joints appear unremarkable" despite impression of iliac wing enthesopathy), 487-88 ("[n]o acute osseous abnormality" or "significant degenerative change" in left shoulder), 659 ("[n]o displaced fracture" or "effusion" in right knee), 660 ("[n]o acute abnormality [in] right shoulder").) To the extent Plaintiff was diagnosed with degenerative disc disease and osteoarthritis, objective findings show it was "mild." (See AR 415-16, 422, 426-28.) Moreover, her physical exams consistently were "normal" (e.g., AR 718-19), showing "stability in all extremities with no pain on inspection" (AR 529 (May 2014), 608 (Apr. 2014), 611 (Feb. 2014), 614 (Jan. 2014), 617 (Dec. 2013), 663 (May 2014), 699 (Sept. 2014), 707 (Aug. 2014)).[17]

Plaintiff also contends that the ALJ erred by giving more weight to the opinions of the state-agency medical consultants than he did to Dr. Alpern's opinion, even though Dr. Alpern "had the opportunity to review . . . more recent records and assessed a more restrictive [RFC] as a result." (J. Stip. at 7.) The additional evidence reviewed by Dr. Alpern belies his more restrictive RFC, however. In the 16 months between when Dr. Tsoulos evaluated Plaintiff's medical records, in April 2013, and

---

[17] The ALJ concluded that Plaintiff's asthma — which Dr. Alpern included among his diagnoses (AR 692) — was not a severe impairment because it was "under control" during the relevant period (AR 42), a finding Plaintiff has not challenged on appeal. Thus, to the extent any of the limitations assessed by Dr. Alpern allegedly resulted from her asthma — something the Court cannot tell because Dr. Alpern did not provide any explanation for his findings — the limitations are inconsistent with the medical evidence as determined by the ALJ and not challenged by Plaintiff.

when Dr. Alpern submitted his opinion, in August 2014, Plaintiff
showed relative improvement.  Most of her musculoskeletal
physical exams from late 2013 until the date of the ALJ's
decision showed a "[n]ormal range of motion, muscle strength, and
stability in all extremities with no pain on inspection." (See,
e.g., AR 529, 608, 611, 614, 617, 663, 699, 707.)  Notes from her
physical- and occupational-therapy sessions during that time also
showed improvement.  For example, in April 2014, Plaintiff was
improving and "able to reach behind [her] back." (AR 525.)  By
May 2014, she reported "50% improvement" of her right shoulder
from therapy and stated that she was "able to reach above [her]
head for items," which she had "previously [been] unable [to
do]." (AR 521); see Stone v. Heckler, 761 F.2d 530, 532 (9th
Cir. 1985) (holding that most recent medical report only most
probative when plaintiff's "condition was progressively
deteriorating"); Young v. Heckler, 803 F.2d 963, 968 (9th Cir.
1986) (per curiam) (holding that ALJ not required to afford
greater weight to most recent medical report because condition
"improved" rather than deteriorated).

Thus, that Dr. Alpern's opinion was inconsistent with the
objective medical evidence was a specific and legitimate reason
for rejecting it.  See Kohansby, 697 F. App'x at 517.

          2.   *Routine and conservative treatment*

The ALJ also discounted Dr. Alpern's opinion because
Plaintiff had "received routine and conservative treatment . . .
which suggest[ed] that her conditions [did] not cause significant
symptoms and functional limitations." (AR 41.)  Conservative
treatment can constitute a specific and legitimate reason to

18

discount a physician's opinion.  <u>See</u> <u>Hanes v. Colvin</u>, 651 F.
App'x 703, 705 (9th Cir. 2016) (finding that ALJ permissibly
discounted physician's opinion based in part on plaintiff's
conservative treatment).

Plaintiff's musculoskeletal pain in her back, hips, knees,
and shoulders was treated almost entirely with ibuprofen (<u>see,
e.g.</u>, AR 491 ("motrin as needed" for hip pain), 515 (Motrin
prescribed)), ice packs and rest (<u>see, e.g.</u>, AR 497 ("wrapping
and cold/ice pack" for knee pain)), and physical and occupational
therapy (<u>see, e.g.</u>, AR 511 (physical therapy for left-shoulder
pain), 514 (same for left-hip pain), 611 ("refer to [occupational
therapy]" for left-shoulder pain)).  Narcotics were never
prescribed.  The Motrin seemingly helped manage Plaintiff's
conditions, as she often reported zero or similarly low levels of
pain (<u>see, e.g.</u>, AR 503 (July 2013: 0/10), 514 (Apr. 2013: 2/10),
529 (May 2014: 0/10), 563 (Feb. 2013: 0/10), 584 (Jan. 2014:
0/10), 588 (Dec. 2013: 3/10), 590 (Oct. 2013: 1-2/10), 593 (Oct.
2013: 0/10), 600 (June 2013: 0/10), 611 (Feb. 2014: 0/10), 617
(Dec. 2013: 2/10), 646 (Mar. 2013: 3/10), 707 (Aug. 2014: 0/10),
729 (Oct. 2014: 0/10), 732 (Sept. 2014: 0/10), 745 (Dec. 2014:
3/10)); <u>cf.</u> <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001,
1006 (9th Cir. 2006) ("Impairments that can be controlled
effectively with medication are not disabling for the purpose of
determining eligibility for SSI benefits."), and to the extent
she complained of higher levels of pain, the ALJ found her to be
"less than fully credible" (<u>see</u> AR 39), which she has not
challenged.  Plaintiff's diarrhea was treated with Nexium and her
asthma with albuterol and Flovent (<u>see, e.g.</u>, AR 355, 611), and

the ALJ found neither impairment severe, which Plaintiff also has not challenged on appeal.

Plaintiff's physical- and occupational-therapy sessions also decreased her symptoms. In early 2012, she "responded well to all [therapy]," she "tolerated treatment well," and "[b]oth [her] strength and endurance [were] improved." (AR 402-03.) At occupational therapy in May 2014, she "report[ed] 50% improvement of [her right] shoulder" and increased range of motion. (AR 521.) The ALJ thus properly characterized Plaintiff's treatment as conservative. See Pruitt v. Astrue, No. CV 11-8158-E, 2012 WL 2006150, at *2 (C.D. Cal. June 5, 2012) (Motrin is conservative treatment); Thomas v. Astrue, No. EDCV 10-01550-JEM, 2011 WL 4529599, at *4 (C.D. Cal. Sept. 30, 2011) (same); Tommasetti, 533 F.3d at 1040 (describing physical therapy as conservative). Accordingly, Plaintiff's conservative treatment was a specific and legitimate reason for the ALJ to discount Dr. Alpern's opinion. See Hanes, 651 F. App'x at 705.

### 3. *Lack of personal observance*

Finally, the ALJ also noted that Dr. Alpern "did not have the benefit of personally observing and examining [Plaintiff]." (AR 41.) The ALJ is responsible for resolving conflicts in medical testimony and ambiguities in the evidence, Magallanes, 881 F.2d at 750, and the lack of an examining or treating relationship was an appropriate consideration in doing so, see §§ 404.1527(c), 416.927(c). That Dr. Alpern reviewed Plaintiff's medical records without personally observing or examining her was a specific and legitimate reason to give his opinion "little weight." (AR 41); see Paden v. Berryhill, No. EDCV 16-02457-JEM,

2017 WL 6509231, at *5 (C.D. Cal. Dec. 20, 2017) (holding that

ALJ'S rejection of nonexamining physician's opinion in part

because he did not personally examine plaintiff was specific and

legitimate reason). Plaintiff objects that in the context of

this case that reason was "[i]nconsistent with the ALJ's own

logic" because the state-agency doctors also did not examine

Plaintiff. (J. Stip. at 7.) But the ALJ gave their opinions

only "some weight" (AR 41-42) and would not have been wrong to

discount them on that basis as well.

Accordingly, the ALJ did not err in assessing the medical-

opinion evidence. Substantial evidence therefore supports the

ALJ's decision. As such, remand is not warranted.[18] See Stubbs-

---

[18] As Plaintiff points out (J. Stip. at 8-9), the ALJ likely
erred by finding at step four that her past work as an elementary
school teacher was past relevant work (see AR 42). "A job
qualifies as past relevant work only if it involved substantial
gainful activity," and "low earnings shift[] the step-four burden
of proof from the claimant to the Commissioner." Lewis v. Apfel,
236 F.3d 503, 515 (9th Cir. 2001); cf. §§ 404.1565, 416.965. The
monthly substantial-gainful-activity minimum was $500 for the 15
years before Plaintiff's alleged onset date. See Substantial
Gainful Activity, Soc. Sec. Admin., https://www.ssa.gov/oact/
cola/sga.html (last visited Mar. 13, 2018). Plaintiff apparently
worked once a week earning $110 a day, totaling $440 a month (AR
291), which falls below the monthly amount. (At the hearing,
Plaintiff appeared to testify that she last worked "two partial
days" a week. (AR 89.) In any event, none of Plaintiff's annual
earnings showed substantial gainful activity. (See AR 269-75.))
As an initial matter, this argument is likely waived because
Plaintiff never raised it during the administrative proceedings.
(See AR 83-100, 347-49); Sims v. Apfel, 530 U.S. 103, 107, 112
(2000); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as
amended); Shaibi v. Berryhill, __ F.3d __, No. 15-16849, 2017 WL
7798666, at *6 (9th Cir. Aug. 22, 2017) (as amended Feb. 28,
2018). Further, any error was harmless because the ALJ made
alternative findings at step five, noting that "[b]ased on a
[RFC] for the full range of medium work" and "considering
[Plaintiff's] age, education, and work experience," the Medical-
Vocational Guidelines directed a finding of "not disabled." (AR
42-43.)

Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

**VI.   CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[19] IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.


DATED: March 15, 2018

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[19] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."